IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2003 Session

# CLINTON LIEN v. METROPOLITAN GOVERNMENT OF NASHVILLE and DAVIDSON COUNTY, ET AL.

Appeal from the Chancery Court for Davidson County
No. 01-126-II    Walter C. Kurtz, Chancellor

---

No.  M2002-00721-COA-R3-CV - Filed March 4, 2003

---

Chief Emmett H. Turner, of the Metropolitan Government of Nashville and Davidson County Police Department, discharged Appellant from employment as a police officer for certain violations of various rules and regulations.  The officer appealed his discharge and, after a hearing, the Administrative Law Judge reduced his penalty to a thirty day suspension.  The appeal was further heard before the Civil Service Commission, which reversed the ALJ and upheld the dismissal of the officer.  The Chancery Court of Davidson County upheld the action of the Civil Service Commission.  The officer appeals, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and DON R. ASH, SP. J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Clinton Lien.

Karl F. Dean and William Michael Safley, Nashville, Tennessee, for the appellee, Metro Government of Nashville and Davidson County.

**OPINION**

Clinton Lien was a metro police officer from August 16, 1993 until April 21, 1999, when he was discharged by metro police Chief Emmett H. Turner on charges of running a swinger's club, downloading pornography on company time, and bringing discredit upon the police force.  Mr. Lien appealed his dismissal, and an administrative hearing took place on February 7 and 8, 2000, before an Administrative Law Judge who, on September 10, 2000, rendered an Initial Order in which he overturned the decision of Chief Turner to fire Mr. Lien and, instead, imposed upon him a thirty day suspension.  Metro appealed the Administrative Law Judge Order to the Civil Service Commission and that Commission, by a vote of three to one, reversed the Administrative Law Judge decision and

upheld Chief Turner's action in discharging Mr. Lien. The appeal by Mr. Lien was to the Chancery Court of Davidson County where the administrative record was filed on March 2, 2001. The case was argued before Honorable Walter C. Kurtz, Circuit Judge sitting by interchange, on February 1, 2002, and taken under advisement. The trial judge rendered judgment on February 20, 2002, upholding the action of the Civil Service Commission, and Mr. Lien timely appealed.

Because we are dealing with the future of a veteran metropolitan government police officer in a case where an Administrative Law Judge has held in his favor and because the vote in the Civil Service Commission was a divided vote, we have left nothing to chance in reviewing the extensive record in this case. The only issue asserted before this Court is whether the action of the Civil Service Board in allowing the submission of extraneous evidence, subsequent to the hearing, of minor previous infractions by Mr. Lien was prejudicial and reversible error rather than harmless error. The action of the Civil Service Commission in this respect was clearly erroneous, but a harmless error analysis cannot be made without careful consideration of the entire record, taking into account all of the evidence that was before the Commission.

The standard of review in this Court is the same standard that was applicable to the review by the trial judge.

> The scope of review in this Court is the same as in the trial court, to review findings of fact of the administrative agency upon the standard of substantial and material evidence. *DePriest v. Puett*, 669 S.W.2d 669 (Tenn.Ct.App.1984). Although what amounts to "substantial and material" evidence provided for in T.C.A. § 4-5-322(h) is not clearly defined. It is generally understood that "it required something less than a preponderance of the evidence, (citations omitted) but more than a scintilla or glimmer." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (1988).

*Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999).

The extensive Memorandum of the learned trial judge left no stone unturned in the consideration of this case, and since we cannot improve upon it, we adopt it in relevant part as the Opinion of this Court as follows:

> This is an appeal from the Civil Service Commission of the Metropolitan Government of Nashville and Davidson County ("CSC") rendered November 16, 2000, pursuant to the Uniform Administrative Procedures Act. The petitioner is challenging his termination of employment as a Metropolitan Police Officer. The petition for judicial review was filed in the chancery court on January 12, 2001.[1] The undersigned Judge is sitting by interchange per Order of January 7, 2002. Both

---

[1] The administrative record was filed with the Court on March 2, 2001.

parties have filed extensive and excellent memoranda of law. The case was argued before the Court on February 1, 2002, and taken under advisement.

The plaintiff in this case contends that the decision of the CSC is illegal, arbitrary, and capricious and that the decision of the CSC was unsupported by the evidence in the record. Specifically, the Petitioner claims that:

. . . .

2.    There is no articulated procedure in the Metropolitan Government of Nashville and Davidson County Civil Service Rules, policy number 6.8 A-1, or Article 12.05    of the Metropolitan Charter to guide the Civil Service Commission in reviewing the initial order which led to the Civil Service Commission acting arbitrarily and capriciously and rendering a decision that was unsupported by the evidence in the record thus violating the petitioner's right to due process warranting a reversal of the decision; and

3.    The expansion of the record by the Civil Service Commission to include prior disciplinary actions of the petitioner was arbitrary and capricious and unsupported by substantial and material evidence in the record violating the petitioner's due process rights.

4.    The act of expanding the record to include prior disciplinary acts of the petitioner by the Civil Service Commission amounted to the Commission using rule making instead of adjudication thus violating the petitioner's right to due process and warranting reversal by this Court.[2]

(Petitioner's Memorandum, pp. 13, 16, 22, and 25)

The Police Chief terminated the petitioner for cause. The petitioner appealed to the CSC. The CSC is established by Article 12 of the Metropolitan Charter. Section 12.05 states in part:

No employee in the classified service may be terminated,  or suspended from the service, or demoted in pay grade, except for cause and after a hearing before the department head or other appointed authority, with prior reasonable notice, in writing, of the proposed

---

[2]    The court considers No. 4 as just another way to raise the complaint made in No. 3. The four (4) issues presented are taken from the section headings in the petitioner's brief.

action and the reasons therefore, .... Any employee terminated from the classified service or suspended or demoted in pay grade, by his simple written request to the commission, shall have the action reviewed by the commission. If the commission does not approve the action, it may modify or reverse it, and provide whatever recompense is indicated, which shall not exceed net loss of earnings. In a review by the commission of any disciplinary action, the disciplinary authority shall bear the burden of proof of just cause for discipline.

Section 12.07(h) states in part:

The disciplinary action within the classified service. Rules with respect to such action shall provide that when an employee requests a review of disciplinary action taken against him, as provided in Section 12.05 above, such employee shall be furnished a copy of the basis of his discipline not less than fifteen days prior to such hearing, and said rules may provide for the amendment of grounds for discipline upon reasonable notice to the employee.

It shall be mandatory that the rules provide that the judgment and findings of the commission on all questions of fact, in the hearing of charges proffered against any classified employee under provision of this article, shall be final and shall be subject to review only for illegality or want of jurisdiction, excepting only cases where the classified employees have been dismissed from the service by judgment of the commission, in which case such dismissed employee may prepare and file the record of the proceedings, including the transcript certified by the chairman of such commission, in the circuit and chancery courts of Davidson County, ....

The CSC itself has adopted rules governing disciplinary proceedings. The rules governing disciplinary proceedings, in cases of an appeal of a dismissal, require a hearing before an administrative law judge ("ALJ") from the office of the Secretary of State. The ALJ then conducts a hearing and enters an "initial order." Rules of the CSC then require:

The commission shall review the initial order of the administrative judge or hearing officer sitting alone. Written notice of the review will be included in the initial order.

The CSC then receives briefs from the parties, hears argument, and then renders a "final order." Judicial review of the CSC is then to the chancery court pursuant to the provisions of T.C.A. § 4-5-322. See T.C.A. § 27-9-114. See, e.g., Gluck v. Civil Service Comm'n., 15 S.W.3d 486(Tenn. Ct. App. 1999)(the demotion of police officer by Metropolitan CSC affirmed).

It is repeated time and again in the appellate decisions that this Court's scope of review on an administrative appeal pursuant to T.C.A. § 4-5-322 is limited. The scope of review is explained as follows:

> The scope of review in this Court is the same as in the trial court, to review findings of fact of the administrative agency upon the standard of substantial and material evidence. DePriest v. Puett, 669 S.W.2d 669 (Tenn. Ct. App. 1984). Although what amounts to "substantial and material" evidence provided for in T.C.A. § 4-5-322(h) is not clearly defined. It is generally understood that "it requires something less than a preponderance of the evidence, (citations omitted) but more than a scintilla or glimmer." Wayne County v. Tennessee Solid Waste Disposal Control Bd., 756 S.W.2d 274, 280 (1988).
>
> While this Court may consider evidence in the record that detracts from its weight, the court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. T.C.A. § 4-5-322(h), Pace v. Garbage Disposal Dist., 54 Tenn.App. 263, 266, 390 S.W.2d 461, 463 (1965). The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonable sound basis for the action under consideration. Pace, 54 Tenn.App. at 267, 390 S.W.2d at 463.

Gluck, 15 S.W.3d at 490.

T.C.A. § 4-5-322 governing this review states in part:

(g) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in

procedure before the agency, not shown in the record, proof thereon may be taken in the court.

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)     In violation of constitutional or statutory provisions;

(2)     In excess of the statutory authority of the agency;

(3)     Made upon unlawful procedure;

(4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)     Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of evidence on questions of fact.

(i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors which affect the merits of such decision.

Petitioner was employed as a Metropolitan Police Officer beginning August 16, 1993, until his termination by Chief of Police, Emmett Turner, on April 21, 1999. Chief Turner 's April 13, 1999, letter to petitioner set out a number of factual allegations for disciplinary action against the plaintiff, which included his operation of an adult sexual entertainment facility, dispensing alcohol without a license, failing to have an off-duty employment request on file, bringing discredit upon the Police Department by operating a swingers club, and using a Department computer to view and download pornography.

Petitioner appealed his termination pursuant to Civil Service Rules and requested a hearing before an ALJ. The Metropolitan Government ("Metro") filed its charges and specifications and proceeded on six (6) charges. A two (2) day

hearing was held before the ALJ beginning on April 7, 2000, where the ALJ heard from fifteen (15) witnesses. Subsequently the ALJ issued a lengthy "initial order" making findings of fact.[3] The ALJ concluded that termination was too harsh a punishment and decided that a suspension of thirty (30) days was more appropriate.

A summary of the detailed twenty-four (24) page opinion is outlined as follows:

1.  Charge: Appellant operated an adult swinger's club in violation of a U.S. District Court injunction.

    - NOT SUBSTANTIATED.

2.  Charge: Appellant gave away alcoholic beverages at his club.

    - DOUBTFUL PROOF.

3.  Charge: Appellant did not receive official permission to operate the club. - PROVED, BUT MANY POLICE OFFICIALS KNEW WHAT HE WAS DOING.

4.  Charge: Appellant's operation of the adult swinger's club brought discredit upon the Police Department. - PROVED, BUT MITIGATED BY THE DEPARTMENT'S INACTION AND FAILURE TO FOLLOW CORRECT PROCEDURE.

5.  Charge: Appellant produced and circulated a flyer for a teen club he operated which stated it was "owned, operated, and secured by a

---

[3] An "initial order" is addressed at T.C.A. § 4-5-314 and the review of an "initial order" at T.C.A. § 4-5-315.

Metro Police Officer." - PROVED, BUT FLYER NEVER CIRCULATED.

6.        Charge: Appellant downloaded pornography and viewed it on police computers. - PROVED.

As to Charge number 6, the ALJ stated and then concluded:

> Of all the facts proven, this was the most serious of the charges. The only reason that this, combined with the other proven charges, should not result in dismissal is because of Appellant's previous spotless record from his employment dating from August 1993. Not only did he never have any previous discipline, but he never received a performance evaluation in any category of less than satisfactory. It is appropriate under the facts here to give Appellant the maximum allowable suspension.

> In order to ensure uniformity of discipline, and ascertain appropriate discipline, this Judge had input from many other judges in this office who have handled Metro Civil Service cases. The final decision to suspend for thirty days is actually more severe than if this had been a consensus opinion.

Metro sought review of the "initial order" of the ALJ and requested that the CSC reject the thirty (30) day suspension recommended by the ALJ and terminate the petitioner. Metro requested that the CSC reverse the "conclusion" of the ALJ and indicated that it did not appeal the factual determination. Metro asserted "that such conduct is not conduct that should be tolerated and therefore [the petitioner] should be terminated from his employment." The Metro attorney stated to the CSC:

> The Department acknowledges however, that there were two of the particular charges which would be considered the most serious of the violations committed by Mr. Lien. These two particular charges include: the using of company time and company equipment to download pornography and secondly, bringing discredit upon the Police Department. Now, unquestionably the ALJ found Mr. Lien

guilty of both these charges. The discredit to the Police Department charge resulted from Mr. Lien's operation of a sex club in which an admission was paid by patrons to enter and engage in open sexual activity with other patrons.

The CSC first met on October 10, 2000, to review the "initial order" of the ALJ. Mr. Lien was represented by counsel and the Police Department by attorney Michael Safley. The matter was heard on argument of counsel. The Chairman of the CSC defined the scope of the hearing as follows:

> We are here to review the record that the Administrative Law Judge had. On these facts, I believe, we are entitled to accept these facts and look at those facts and make a judgment about the disposition on those facts. I mean... Chief Turner made one judgment. The Administrative Law Judge made an entirely different judgment and now it is before this Commission to review these judgments and to make our own determination based on the facts.

During the discussion between the CSC members and counsel, one of the CSC members questioned whether the ALJ's finding that the petitioner had a "spotless record" was correct in that there was an article in the record from The Tennessean that supposedly indicated that the petitioner had been disciplined a number of times since joining the force in 1993. The petitioner's lawyer objected and the Chairman ruled:

> O.K., we are going to rule evidentiary speaking, that we will not consider anything The Tennessean article says about his prior record Mr. Roberts. [Petitioner's attorney]. You are exactly right. I haven't seen the article and certainly [will] not consider that. So anything that ... we are again bound by the findings of fact that the Administrative Law Judge found even in this case if they are correct or incorrect.

As the proceeding reached an end, one of the CSC members stated that he had not read the ALJ's decision and asked that the matter be postponed. Counsel agreed that

a postponement would be appropriate and the proceeding was reset for November 14, 2000.

When the case was called on November 14th, the Chairman announced that the CSC had "expanded the record to include Mr. Lien's personnel record." The petitioner objected. The discussion, however, continued related to the charges against the petitioner and the Chairman pointed out that, while the prior disciplinary matters involving the petitioner were "minor," he did not have a "spotless record" as the ALJ had found.[4] As to the ALJ's finding that the petitioner had a "spotless record," the Chairman stated "now that's simply wrong."

The CSC continued to discuss the case until a vote was taken, and by a vote of three (3) to one (1) the CSC voted to overturn the "initial order" of the ALJ and reinstate Chief Turner's decision for termination. The CSC then on November 16, 2000, entered a brief Final Order which states in pertinent part as follows:

> Based on consideration of the Technical Record and Order as issued by Administrative Law Judge Robert Fellman, it is hereby ORDERED that the decision entered by the Administrative Law Judge to reduce the disciplinary action to a thirty (30) day suspension, be REVERSED, and the Appointing Authority initial decision to dismiss Mr. Lien, shall be UPHELD by this Commission and considered FINAL.[5]

When reviewing an "initial order" the CSC is "not bound to accept the findings and recommendations of hearing examiners." See Sanderson v. University of Tennessee,

---

[4] The record showed discipline for two (2) traffic violations and a failure to appear in court.

[5] This final order does not comply with the requirements of T.C.A. § 4-5-315(i) and 4-5-314(c). This deficiency is, however, not alleged as error by the petitioner.

1997 WL 718427, *5 (Tenn. App. Nov. 19, 1997). Here, the CSC and the parties accepted the factual findings of the ALJ, but the CSC, as is appropriate, substituted its judgment as to the appropriate action to be taken.

. . . .

## II. Lack Of Articulated Standards

As near as the Court can determine, the petitioner's complaint is that the CSC makes its decision without any standards and, therefore, the decision is subjective and arbitrary. This contention is confusing because it does not allege that the CSC's decision was arbitrary compared to the punishment imposed for other like disciplinary infractions but, rather, goes off on a tangent about there being no "articulated procedures ... to guide the Commission" in making its decision. The petitioner asserts that there should be criteria by which the CSC can make a determination between those cases that warrant reprimand, a short suspension, a long suspension, or termination. Without such standards the petitioner argues that the decision can be nothing but subjective, arbitrary, and inconsistent with the policy of the civil service laws.

The Metropolitan Charter has created the civil service system and has charged the CSC to oversee and review the decisions of department heads related to employee discipline as being consistent with the departmental rules and civil service laws. The Court is unaware of any legal authority which requires that specific written criteria be adopted governing the choice of sanctions for employment rule infractions.

-11-

If a government employer has a choice of sanctions available for the violation of an employment rule, it would only be a finding of arbitrariness that would allow a court to "second guess" the administrative decision maker. It is the CSC itself that is the primary protector of the employee against the arbitrary action of his department head.

The determination of arbitrariness within the structure of an administrative law decision is to compare the decision at issue with the precedent in prior cases. See Pierce, supra at § 11.5 (Unexplained Departures From Precedent). Thus, if an agency treats individuals differently, it must acknowledge and explain that difference in treatment or be subject to a determination of arbitrariness. Id. When an agency does not have a sufficient record of precedents or the record of precedents is not made, there is no occasion to find that the decision was arbitrary. Id.

In his brief the petitioner cites page 330 of the record and contends that he asked the CSC to consider disciplinary actions taken against other police officers in like cases. That contention is not exactly correct. Counsel on page 330 argued that "[the ALJ] looked at the previous disciplinary action of other employees to see what would happen to them when they did not fill out a form one fifty. And at that point, he mitigated the termination of Clinton Lien by determining that other employees that had committed the same act were not terminated." This comment was in reference to the minor offense of failing to file the paperwork related to petitioner's second job. Both the ALJ and the CSC found this offense to be minor compared to the viewing

-12-

and downloading of pornography by the use of a government computer and the operation of a "swinger 's" club.

Although not referred to in petitioner's brief, the more important comment was made by Mr. Roberts to the CSC when he stated:

> With no standards by which this action could be taken [,] [t]wenty three other disciplinary matters were gone into at this evidentiary hearing. In part of Chief Turner's own deposition, with people who had committed similar violations, or more severe violations nobody received termination. They all received either reprimands or one or two days off with pay. (TR at 302).

This comment again referred to discipline for failure to file the form 150, one of the minor infractions at issue. (See ALJ Order at p. 8). Mr. Roberts then later said:

> If you read the record, you will find that there ... that some rather exhaustive testimony was introduced during Chief Turner's deposition. And he testified by deposition. In which the disciplinary actions regarding other Officers were gone into. Some of them much more serious than any that Officer Lien was accused of. Including in one case brandishing a firearm in a bar after drinking. That Officer was not terminated. That brings discredit to the Police Department. Losing a weapon to someone else. Those were testified to extensively and those punishments were far less than termination. There was no consistency as to the punishments given and that is in part the basis of Officer Lien's appeal. (TR at 309).

There was proof in the record, brought in during Chief Turner's testimony, of disciplinary action taken against other officers for a wide variety of violations. (TR 575-587, 589-611). None of these, however, involved examples which resulted in termination of officers. (TR 616). Chief Turner was then asked why he terminated the petitioner and not the other officers whose situations he had been asked about:

-13-

Q.  Would you explain, why is there a difference between one - or two-days' suspension for the type of offenses to some people and in Mr. Lien's case he got termination?

A.  Well, I think what you have to take into consideration is that those were single incidents that occurred.  Although some of the officers or some of the employees may have had prior charges, they were single situations that had occurred during the course of their employment.

Q.  And how does that compare to Mr. Lien?

A.  Well, I think if you compare those individuals with what Mr. Lien was doing – and certainly I don't think any of those individuals were operating a sexually oriented business.  In my view, none of those people were charged with viewing sexually explicit documents on a computer, they were not charged with operating a private business that was engaged in sexually oriented affairs.  And in my opinion, Mr. Lien's business certainly brought a discredit to the police department, and I felt very strongly that the offenses that he had committed or the rules that he had violated certainly were serious enough to warrant termination.

(TR 617-18).

The record does not suggest that the ALJ or the CSC disregarded petitioner's evidence as to disciplinary decisions regarding other police officers.  In fact, the ALJ probably went too far in making the comparison of this case with other cases.  The ALJ's comment on page 23 of his opinion that he had "input" from other judges in his office, in an effort to ascertain what had happened in other cases, is of dubious legality.  See T.C.A. § 4-5-304(a)(b) and T.C.A. § 4-5-314(d).

In determining discipline of an employee, "supervisors have discretion on how to discipline the employee." Gluck, 15 S.W.3d at 490-91.  As the issue was articulated and presented by the petitioner, the Court finds no due process violation.

### III. Expansion Of The Record By The CSC To Include
### Prior Disciplinary Actions Against The Petitioner.

The CSC initially met in October 2000 and because a Commissioner had not read the findings of facts and conclusions of law entered as the "initial Order" of the ALJ, the matter was continued until November 14, 2000. As the November hearing opened, it was announced by the Chairman that the CSC, itself, had obtained the personnel file of the petitioner so as to inquire into his prior disciplinary proceedings. The petitioner objected to the CSC's augmentation of the record. Mr. Safley stated that he had not requested this augmentation and actually did not think that the prior disciplinary actions against the petitioner were of much importance.

The CSC Chairman explained that the ALJ had found that the petitioner had no prior disciplinary actions against him and part of the basis of his recommendation for only a suspension was petitioner's "spotless" record. An article from The Tennessean was in the record which indicated that the petitioner had some prior disciplinary problems. Therefore, the CSC, on its own motion, sought out and procured the filing of petitioner's personnel record. Mr. Safley stated "I have not made such a motion. The police department has not requested that. That doesn't mean that the Commission can do that but it is not pursuant to any motion that I have come and laid before you." Chairman Farmer stated: "No. I requested his personnel record be made a part of the record so that it has some clarification about that." The Chairman then later stated "[i]t was my understanding and continues to be my understanding that [the] Civil Service Commission has the power and authority under

-15-

the code to expand the record in every disciplinary case that is brought to us to include an employee's past disciplinary record."

The issue before the Court, then, is whether or not the CSC can expand the record as was done in this case.

The Court concludes that it was impermissible for the CSC to expand the record. The brief filed by Metro in this case cites to no rule, statute, or case in support of the argument that the CSC can expand the record. The Court is of the opinion that in considering the statute, T.C.A. § 4-5-315 (b)-(h) governing an appeal from an initial order, the statute does <u>not</u> contemplate further proof being presented before the agency or commission reviewing an initial order. The Court reaches that conclusion by reference to the provision found in subpart (e) which states "[t]he agency shall afford each party an opportunity to present briefs and may afford each party an opportunity to present oral argument." Furthermore, in subpart (g) the statute states that the agency may render a final order or "may remand the matter for further proceedings with instructions to the person who rendered the initial order."[6] The Court is of the opinion that this statute contemplates that the reviewing agency or commission shall review the "initial order" on the record before the ALJ. If it is necessary to take further proof, the case has to be remanded back to the ALJ. The Court would further note, in a discussion of agency review of the initial order, there was no mention of the reviewing body's ability to hear additional evidence or to

---

[6] The rule of statutory construction is "expressio unius est exclusio alterius," The expession of one thing excludes the other. <u>See</u> <u>Vulcan Materials Co. v. Gamble Const. Co.</u>, 56 S.W.3d 571, 576 (Tenn.App.2001).

augment the record on its own motion.  See Kratzke, A Review of Contested Case Provisions of the Uniform Administrative Procedures Act, 13 U. Mem. L. Rev. 552, 582-84 (1983).

Furthermore, the Tennessee Rules of Evidence apply to this case. See T.C.A. § 4-5-313.  T.R.E. 614(a) only allows a judge (and a Commissioner) to call a witness in "extraordinary circumstances."  That rule would also apply to the production of documentary evidence. Documentary evidence is only properly admissible after a witness lays a foundation.  As one commentator on Tennessee law has stated:

> Under the Anglo American trial process, lawyers for the parties have the responsibility of deciding which witnesses to call and what questions to ask.  The judge is a neutral participant who generally refrains from direct involvement in the presentation of proof, other than to rule on objections by counsel.

Cohen, Sheppeard and Paine, Tennessee Law of Evidence § 6.14.1 (4th ed. 2000). Here, it is important to remember that counsel for Metro did not ask for the admission of the personnel file nor did counsel for Metro rely, in any way, on the petitioner's prior disciplinary record.  In fact, counsel for Metro specifically stated that he did not feel that the prior disciplinary record was important because the prior infractions were so minor.

This case is akin to State v. Brock, 940 S.W.2d 577 (Tenn. Crim. App. 1996) where the judge called a witness in order to fill a gap in the state's proof.  The trial judge had noted that no one had proven the victim's age, a necessary element in a statutory rape case.  The judge, therefore, recalled a witness to present evidence as to the victim's age.  The appellate court found this to be error.  The Court, here, finds

that even if the statutory prohibition is disregarded, the CSC erred by augmenting the record on its own motion. See also J.F. v. State, 718 So.2d 251, 252 (Fla. App. 1998)(trial court departs from position of neutrality when it sua sponte orders the production of evidence that the [party] itself never sought to offer into evidence).

Metro has argued that even if the CSC was in error in augmenting the record, that the error was harmless. See Hoover v. State Bd. of Equalization, 579 S.W.2d 192 (Tenn. App. 1978)(if an administrative agency commits harmless error, the reviewing court cannot use it as a proper basis for reversal of the agencies decision); Berke v. Chattanooga Bar Assoc., 436 S.W.2d 296, 304 (Tenn. App. 1968); and T.C.A. § 4-5-322(h).

Metro cites specific quotations from CSC members stating that they did not consider the petitioner's prior disciplinary record in reaching their decision. Metro is correct. Even though it was error for the CSC to include past disciplinary documents in the record, such inclusion was harmless. There is "sufficient competent evidence" to support the decision of the CSC. The following comments of the various Commissioners are uncontradicted by the record. During the deliberation of this matter, the following statements were made:

> COMMISSIONER RACHEL:     What I see in looking at the entire case is separate incidents, but all of them reflect on a lack of judgement (sic) on the part of the employee. Even though they are separate and different in regards to what happened. Even the last comment relative to the form one fifty, in my opinion, reflects a lack of judgement (sic) on his part. **I still think that the issue down loading the pornography in and of itself should warrant separation.** It also shows a lack of judgement (sic). So, I don't know what the other incidents have been to other employees who

have used technology for their own personal benefit that's identical or not. But that incident alone, in my opinion, warrants separation. (TR. p.335)(emphasis added)

VICE-CHAIRMAN CORBITT: **Well, I happen to agree with Commissioner Rachel. Also, I agree with the ALJ that the disciplinary actions, the supplemental information that we received doesn't weigh relative to me in ultimate disciplinary action.** I happen to agree that we have the right to request that information and we always have. And in spite of the arguments we heard that there was a precedent where we couldn't expand upon the record, we've always had the option or the right to request the personnel file and additional information regarding an employee. I don't agree with the Judge's ultimate decision in overturning the termination. At the appropriate time, I will vote accordingly. (TR. p. 335-336)(emphasis added)

CHAIRMAN FARMER: What we have in front of us here is a Police Officer operating a swingers club. Not getting permission to do that. Bringing discredit upon the Police Department. I ...clearly that is something that I believe would be, in my opinion, bringing discredit upon the Police Department. **Using the computer on duty to down load Adult pornography is serious enough offense in and of itself to warrant dismissal** and I agree with Commissioner Rachel on that issue as well.

**I'm not considering the disciplinary record ...prior disciplinary record as having any particular medigation (sic) or one way or the other in this case.** Because as I said it is so minor, but we will make it a part of the record. (TR. p. 337)(emphasis added)

As evidenced by the above passages, each Commissioner felt that the actions of the petitioner, specifically the downloading of pornography on a Department computer while on duty, warranted dismissal of employment. Commissioners Corbitt and Farmer even went further and specifically stated that the prior disciplinary actions that were added to the record played no role in their decision to terminate the employment of Mr. Lien. The CSC voted three (3) to one (1) to

-19-

overturn the judgment of the ALJ and reinstate termination of employment as the appropriate punishment. The three votes came from the above quoted Commissioners. The information concerning the petitioner's past disciplinary record played no role in the decision of the CSC.

## IV. Conclusion

The Court concludes as follows:

. . . .

2.      The Court finds no due process violation related to petitioner's allegation that the decision rendered by the CSC was somehow standardless.

3.      The Court finds that while it was error to augment the record, that error was harmless. There is material evidence to support the decision of the CSC.

The order of the CSC is affirmed. Costs are taxed to the petitioner.

The ALJ, in his findings of fact, described the materials downloaded by the Mr. Lien from a computer also operated by the secretary in the warrants division of the police department. He observed, "[m]ost of the pictures were of nudity alone, similar to those found in Playboy. But some of the pictures arguably could be considered pornographic, although none showed the ultimate sex act."

The ALJ has confused *Playboy* magazine with *Hustler* magazine. In observing that, under the criminal laws of the United States, the First and Fourteenth Amendments to the Constitution of the United States provided protection for everything except "hard-core pornography," Justice Potter Stewart observed, "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it." *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964) (Stewart concurring).

Downloading pornography - - hard-core, soft-core, or medium-core - - - on one's own computer, in the privacy of one's own home is one thing. Downloading such materials on a computer assigned to another employee of the police department on department time and leaving the

disk for perusal by other employees of the department who might not share Appellant's enthusiasm for such erotic display of the female body is quite another thing.

In the final analysis, Mr. Lien asserts on appeal a single issue that the admitted error of the Civil Service Board in allowing the record to be supplemented, post-hearing, by materials related to his prior minor disciplinary infractions justifies reversal. Considering the entire record in the case, it clearly does not, as the error is harmless.

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the cause are assessed against Appellant.

                                               _____

                                               WILLIAM B. CAIN, JUDGE