IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 21, 2005

## PEGGY ARMSTRONG v. METROPOLITAN NASHVILLE HOSPITAL AUTHORITY

**Appeal from the Chancery Court for Davidson County**
**No. 03-2404-IV     Richard H. Dinkins, Chancellor**

---

**No. M2004-01361-COA-R3-CV - Filed on June 6, 2006**

---

This appeal involves the discharge of a clerical employee by the Metropolitan Nashville General Hospital.   After her discharge was upheld by the Metropolitan Nashville Hospital Authority, the employee filed a petition in the Chancery Court for Davidson County seeking judicial review of the decision to discharge her.  The trial court affirmed the discharge, and the employee has appealed. Like the trial court, we have determined that the decision to discharge the employee for deficient and inefficient performance of duties is supported by substantial and material evidence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

Stephen W. Grace, Nashville, Tennessee, for the appellant, Peggy Armstrong.

Karl F. Dean and Wm. Michael Safley, Nashville, Tennessee, for the appellee, Civil Service Commission of the Hospital Authority of Metropolitan Nashville and Davidson County.

**OPINION**

**I.**

Peggy Jean Armstrong went to work for the Metropolitan Nashville General Hospital in late 1979 or early 1980.  While she worked briefly in the admitting office, most of Ms. Armstrong's work consisted of clerical duties in the patient accounting department.  Beginning in 2001, Ms. Armstrong's work performance commenced a steep decline.  In addition to more frequent use of her sick leave, Ms. Armstrong was frequently tardy, and her ability to complete her work suffered.

Ms. Armstrong's supervisors informally counseled her about her performance.  Eventually, they gave her more formal oral and written warnings and worked out a performance improvement plan for her. On May 1, 2002, after Ms. Armstrong's work did not improve, the Director of Patient Accounting gave her a letter notifying her that she was in violation of the civil service rules of the

Hospital Authority of Metropolitan Nashville regarding sick leave abuse, absenteeism and tardiness, and deficient or inefficient performance of duties. The letter also notified Ms. Armstrong of her right to a hearing regarding these violations. Following the hearing, the hospital's Director of Patient Services notified Ms. Armstrong that she was discharged because of "a pattern of deficient or inefficient performance of duties and excessive absenteeism which is below the standard for employment at Metropolitan Nashville General Hospital."

Ms. Armstrong appealed this decision to the hospital's chief executive officer. In a letter dated June 14, 2002, the CEO informed Ms. Armstrong of her decision to uphold the discharge. The CEO noted that Ms. Armstrong had "been extended multiple opportunities through counseling, both oral and written warnings as well as a Performance Improvement Plan to improve . . . [her] performance in accordance with the established expectations of . . . [her] assignment and yet . . . [she had] continued to consistently perform below expectations in all aspects of . . . [her] job." Notwithstanding Ms. Armstrong's performance, the CEO offered to allow her to resign "to allow . . . [her] to successfully pursue other employment opportunities."

Ms. Armstrong declined the offer to resign and pursued the final step of her administrative appeals by requesting a hearing before the Metropolitan Nashville Hospital Authority. At a hearing conducted on May 19, 2003, Ms. Armstrong claimed that her poor performance was the result of depression and anxiety for which she had been treated since 1997. The Hospital Authority entered a final order on June 25, 2003, concluding that Ms. Armstrong had failed to establish that her depression substantially limited any major life activity, that it prevented her from performing the duties of her job, or that any accommodations could reasonably have been made. Accordingly, the Hospital Authority concluded that "[d]ue to the fact Ms. Armstrong could not appropriately carry out the functions of her job, the administration of General Hospital had just cause to terminate her employment."

On August 18, 2003, Ms. Armstrong filed a petition in the Chancery Court for Davidson County seeking judicial review of the Hospital Authority's decision to uphold her discharge. Ms. Armstrong later abandoned any claim for relief based on the Americans With Disabilities Act. On April 28, 2004, the trial court filed a memorandum opinion upholding the Hospital Authority's decision. Ms. Armstrong has appealed.

## II.

Contested case hearings conducted by local "civil service boards" that affect the "employment status of a civil service employee" must be conducted in accordance with Tennessee's Uniform Administrative Procedures Act. Tenn. Code Ann. § 27-9-114(a)(1) (2000).[1] The term "civil service board" includes any local government board or commission that "acts as a functional equivalent" of a civil service board by holding hearings, analyzing evidence, and determining appeals

---

[1] This requirement does not apply to "municipal utilities boards or civil service boards of counties organized under a home rule charter form of government." Tenn. Code Ann. § 27-9-114(a)(2). Only two counties, Knox and Shelby, are organized under a home rule charter form of government.

from administrative decisions affecting the employment of civil service employees. *Tidwell v. City of Memphis*, ___ S.W.3d ___, ___, 2006 WL 1381460, at *6 (Tenn. 2006). The parties in this case agree that the Metropolitan Nashville Hospital Authority serves as the functional equivalent of the Civil Service Commission with regard to employees of the Metropolitan Nashville General Hospital. Therefore, the Uniform Administrative Procedures Act governed both the administrative and judicial proceedings in this case.

Both the trial and appellate courts review an administrative agency's decision using the standard of review provided in Tenn. Code Ann. § 4-5-322(h) (2005). *Mosley v. Tenn. Dep't of Commerce & Ins.*, 167 S.W.3d 308, 316 (Tenn. Ct. App. 2004); *Lien v. Metro. Gov't of Nashville*, 117 S.W.3d 753, 755 (Tenn. Ct. App. 2003). When an agency's jurisdiction or procedures have not been challenged,[2] Tenn. Code Ann. § 4-5-322(h)(4), (5) requires the courts to review the agency's decision using a three-step analysis. First, the court must determine whether the agency has identified the appropriate legal principles applicable to the case. Second, the court must carefully examine the agency's factual findings to determine whether they are supported by substantial and material evidence.[3] Third, the court must examine how the agency applied the law to the facts. *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005).

Because the application of the law to the facts is a highly judgmental process involving mixed questions of law and fact, the courts must be deferential to the agency.[4] The courts may not reweigh the evidence or substitute their judgment for the agency's, even if the evidence could support a conclusion different from the one reached by the agency. Tenn. Code Ann. § 4-5-322(h)(5)(B); *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 693 (Tenn. 1996); *Martin v. Sizemore*, 78 S.W.3d at 276. Rather, the courts must determine whether a reasoning mind could reasonably have reached the conclusion reached by the agency, consistent with a proper application of the controlling legal principles. *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d at 820.

---

[2]Tenn. Code Ann. § 4-5-322(h)(1), (2), (3) permit affected parties to challenge an agency's decision on the ground that it violated constitutional or statutory procedures, that it exceeded the agency's statutory authority, or that it resulted from an unlawful procedure.

[3]While Tenn. Code Ann. § 4-5-322(h) does not clearly define "substantial and material evidence, the courts have generally interpreted the requirement as requiring "something less than a preponderance of the evidence but more than a scintilla or glimmer." *Wayne County v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988). Substantial and material evidence consists of such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion. Substantial and material evidence furnishes a reasonably sound basis for the agency's decision. *Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984); *Methodist Healthcare-Jackson Hosp. v. Jackson-Madison County Gen. Hosp. Dist.*, 129 S.W.3d 57, 64 (Tenn. Ct. App. 2003); *Bacardi v. Tenn. Bd. of Registration in Podiatry*, 124 S.W.3d 553, 561 (Tenn. Ct. App. 2003); *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001).

[4]*See Bobbitt v. Shell*, 115 S.W.3d 506, 512 (Tenn. Ct. App. 2003) (courts must defer to an agency's decision when there is a sound basis to support it); *Martin v. Sizemore*, 78 S.W.3d at 268 (courts customarily defer to adjudicatory determinations made by agencies acting within their area of specialized knowledge, experience, and expertise).

## III.

The sole question properly before this court involves the factual support for the Hospital Authority's decision to uphold Ms. Armstrong's discharge.[5] Ms. Armstrong insists that the record does not contain substantial and material evidence to support her discharge or, in the alternative, that the evidence regarding her job performance warranted less severe discipline. The Hospital Authority responds that the record contains ample evidence to support the decision to discharge Ms. Armstrong. After carefully reviewing the record, we agree with the Hospital Authority.

## A.

We turn first to the evidence regarding Ms. Armstrong's performance. The record shows that the hospital established specific performance standards for its employees and that each employee's performance was evaluated on a regular basis using a point system scaled from "1" to "3." A rating of "1" indicates unacceptable performance; a rating of "2" indicates acceptable performance; and a rating of "3" indicates performance exceeding the expected standard. Employees who score below 1.95 are required to agree to a plan of action to improve their performances and then to undergo a follow-up evaluation.

Between December 9, 1997, and May 2, 2002, Ms. Armstrong's highest score on any evaluation was 2. On five occasions she scored below the 1.95 cut-off, including a score of 1.68 which she received after completing a thirty day plan of action to improve her performance. Ms. Armstrong asserts that these performance skills tests are inadequate to support her termination on grounds of deficient or inefficient performance of duties because attendance is included as a part of the score and because she was not found to be excessively absent from work. We are unpersuaded by this argument. A close review of the test results indicates a pattern of sub-par performance in areas wholly unrelated to attendance. Moreover, the record indicates that the Hospital Authority relied on more than mere test results when evaluating Ms. Armstrong's performance. Her immediate supervisor described Ms. Armstrong's work as replete with "frequent errors" and "carelessness." Her former supervisor detailed how Ms. Armstrong had difficulty with the accuracy and timeliness of her workload. A co-worker even described how Ms. Armstrong frequently had a backlog of work. This evidence is sufficient to meet the "substantial and material" test required by Tenn. Code Ann. § 4-5-322(h)(5).

## B.

Ms. Armstrong also asserts that the hospital should have followed the progressive discipline process contained in the Civil Service rules. She points out that both suspension and demotion were

---

[5]Ms. Armstrong's brief contains a passing reference to the Americans with Disabilities Act. She is in no position to question the hospital's compliance with this Act because she abandoned this claim in the trial court. Questions and issues not pursued in the trial court cannot be raised on appeal. *City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905-06 (Tenn. 2004); *Hill v. Moncier*, 122 S.W.3d 787, 792 (Tenn. Ct. App. 2003); *Green v. Innovative Recovery Servs., Inc.*, 42 S.W.3d 917, 919 (Tenn. Ct. App. 2000).

available remedies and asserts that the hospital could have chosen one of these remedies rather than discharging her.

It is settled law that sanctions lawfully applied by an administrative agency are subject only to very limited judicial review. *Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185-86, 93 S. Ct. 1455, 1458 (1973); *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir. 1984); *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 693 (Tenn. 1996). Because "the relation of remedy to policy is peculiarly a matter of administrative competence," *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194, 61 S. Ct. 845, 852 (1941), the courts should not second-guess the severity of sanctions imposed by an administrative agency when, after review, it is apparent that those sanctions were lawfully applied in circumstances of sufficiently satisfactory evidence. *Robertson v. Tenn. Bd. of Social Worker Certification & Licensure*, No. M2004-00647-COA-R3-CV, 2005 WL 3071571, at *7 (Tenn. Ct. App. Nov. 15, 2005) *perm. app. granted* (Tenn. May 30, 2006); *Wright v. Tenn. Bd. of Exam'rs in Psychology*, No. M2003-01654-COA-R3-CV, 2004 WL 3008881, at *6 (Tenn. Ct. App. Dec. 28, 2004), *perm. app. denied* (Tenn. June 27, 2005); *Mosley v. Tenn. Dep't. of Commerce & Ins.*, 167 S.W.3d at 318-322.

The record contains sufficient evidence to support the hospital's decision to discharge Ms. Armstrong. During her employment, she was reassigned on one occasion because of her inability to perform her assigned duties. In addition, she received verbal warnings, written warnings, and suspensions because of the inadequacy of her performance, tardiness, and abuse of sick leave.[6] Ms. Armstrong's supervisors and co-workers also testified about the deficiencies in her work. In the face of this sort of evidence, the courts are not in a position to second-guess the Hospital Authority's decision to uphold Ms. Armstrong's discharge.

## IV.

The judgment is affirmed and the case is remanded to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Peggy Jean Armstrong and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.

---

[6]Ms. Armstrong did not take issue with these measures.

-5-