# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### July 19, 2012 Session

## CITY OF MEMPHIS v. JASON MORRIS, ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-06-1334/CH-07-0039      Arnold B. Goldin, Chancellor**

_____

**No. W2011-02519-COA-R3-CV - Filed September 14, 2012**

_____

A Memphis police officer was terminated after he was involved in a physical altercation with his girlfriend during which she sustained facial injuries. The Civil Service Commission upheld the termination, and the chancery court affirmed. In the initial appeal to this Court, we remanded for the Commission to make findings of fact and conclusions of law. The Commission issued an amended decision with additional findings. Upon reviewing the amended decision, the chancery court reversed the termination and reinstated the officer. The City appeals, arguing that the Commission's decision was supported by substantial and material evidence. The officer presents numerous arguments in support of his assertion that reversal of the Commission was proper. We affirm the order of the chancery court in part, but we vacate the reinstatement of the officer and reinstate the Commission's decision to uphold termination.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Herman Morris, Jr., City Attorney, Zayid A. Saleem, Assistant City Attorney, Memphis, Tennessee, for the appellant, City of Memphis

Deborah Godwin, Memphis, Tennessee, for the appellee, Jason Morris

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Jason Morris was employed by the City of Memphis Police Department for approximately thirteen years. The incident that led to his termination occurred on February 23, 2003. Officer Morris was involved in an argument and physical altercation with his then-girlfriend, Ms. Morgan, at her apartment in Memphis. Later that day, either Ms. Morgan or one of her co-workers reported the incident to the Internal Affairs Bureau of the Memphis Police Department.

Following an investigation by the Internal Affairs Bureau, on April 10, 2003, Officer Morris was charged with violating two Departmental Regulations. Because of the physical altercation with Ms. Morgan, Officer Morris was charged with violating DR-104, regarding "Personal Conduct," which provides:

> The conduct of each member, both on and off duty, is expected to be such that it will not reflect adversely on other members, the Department, the City of Memphis, or the law enforcement profession. This regulation applies to both the professional and private conduct of all members. It prohibits any and all conduct which is contrary to the letter and spirit of departmental policy and procedure which would reflect adversely upon the Department or its members. It includes not only all unlawful acts by members but also acts which, although not unlawful in themselves, would violate the Law Enforcement Code of Ethics, and would degrade or bring disrespect upon the member or the Department.

Officer Morris was also charged with a violation of DR-108, regarding "Truthfulness," based upon the allegation that he was untruthful in a statement he gave to the Internal Affairs Bureau regarding the incident. DR-108 provides:

> A member shall not give any information, either oral or written, in connection with any assignment or investigation that is either knowingly incorrect, false or deceitful.

According to the statement of charges, Officer Morris had told investigators that he did not contact Ms. Morgan after the incident, but their investigation revealed that he had sent her several text messages.

An administrative hearing was held before Deputy Chief L.A. Godwin on June 5,

2003. At the hearing, Officer Morris conceded that a struggle had taken place between him and Ms. Morgan, and he claimed that his elbow had struck her eye. He said that, at the time, he knew he had hit something but he did not know it was her eye. Regarding the charge of untruthfulness, Officer Morris claimed that he was only asked whether he had left messages on Ms. Morgan's answering machine, and he was never asked about text messages. Chief Godwin sustained both charges and ordered that Officer Morris be terminated, with the following explanation:

> This incident reflects a pattern of behavior that is inconsistent with traits required to be a police officer. The actions of Officer Morris of striking the complainant either by elbow or fist reflect adversely upon the Memphis Police Department, thus placing him in violation of D.R. - #104 Personal Conduct. In addition, his denial of leaving messages when asked by the Investigator places him in violation of D.R. - #108 Truthfulness. After careful consideration of the evidence presented before me, I am therefore sustaining the charge[s] of D.R. - #104 - Personal Conduct and D.R. - #108 Truthfulness and the action ordered is termination.

> The reason for this discipline is based upon this officer's actions and conduct in this incident, as well as his past disciplinary record, which includes several sustained administrative charges including Personal Conduct, Neglect of Duty and violation of departmental Sick Abuse Policy.

Officer Morris was terminated effective June 6, 2003.

Officer Morris appealed his termination to the Civil Service Commission. Pursuant to the City Charter, he requested that his hearing before the Civil Service Commission be postponed until pending criminal charges against him were resolved. As a result, the hearing before the Civil Service Commission did not take place until September 22, 2006, three years after his termination. The City of Memphis made several attempts to serve Ms. Morgan with a subpoena to testify, but she was unable to be served, as she had apparently moved outside the State of Tennessee. However, an investigating officer from the Internal Affairs Bureau, Lieutenant Angela Jenkins, had met with Ms. Morgan on the day of the incident, and she testified about her observation of Ms. Morgan's injuries. Lt. Jenkins testified that when she arrived on the scene, she observed Ms. Morgan crying and saw a darkened bruise underneath her left eye. Lt. Jenkins said that while she was on the scene, she observed that the bruise became "a lot more darkened than it originally was upon our first arrival." According to Lt. Jenkins, Ms. Morgan stated that she had other injuries as well. Lt. Jenkins testified that Ms. Morgan had a reddish spot and bruising underneath the front part of her neck, a reddish area on the back of her neck, and bruising on the side of her neck. Lt. Jenkins produced

photographs that she had taken of Ms. Morgan's injuries and she also attempted to draw a diagram of the injuries with a pen as she described them. Lt. Jenkins testified that she took a statement from Ms. Morgan, but she did not testify about the content of the statement. She testified that Ms. Morgan declined medical treatment and signed a refusal to prosecute form.

Chief Godwin also testified. As the hearing officer at the pre-termination administrative hearing, Chief Godwin explained that he decides whether to sustain charges by considering the investigative file prepared by the Internal Affairs Bureau in conjunction with the statements made during the hearing. In this case, Chief Godwin said he decided to terminate Officer Morris for the DR-104 Personal Conduct violation because Officer Morris's statements about the incident were inconsistent with the evidence located in the investigative file, such as the photographs of Ms. Morgan's injuries. Chief Godwin testified that he considers an officer's "disciplinary resume" when considering the appropriate punishment for a violation because "[i]t's part of progressive discipline." He said that in Officer Morris's case, he considered the fact that Officer Morris was disciplined in 1999 for another "domestic violence situation" that was similar to this one. At that time, Officer Morris had also been charged with violating DR-104 Personal Conduct, and he received a five-day suspension. Chief Godwin said that, according to an internal memo he reviewed regarding the 1999 incident, Officer Morris apologized and acknowledged that he would work hard to avoid such physical altercations in the future. He noted that although Officer Morris was arrested at the time of the 1999 incident, Officer Morris was placed "on AG's diversion, which is not regarded as a conviction," and the charges were dismissed.

After discussing the 1999 incident, Chief Godwin testified that he would have terminated Officer Morris based upon the 2003 Personal Conduct violation, alone, even if Officer Morris had no prior disciplinary record. He explained that domestic violence is not tolerated by the Memphis Police Department because it is inconsistent with being a police officer, who should enforce the laws and assist victims, and he said that this incident had cast a negative image upon the police department.

Chief Godwin explained that both of the charges against Officer Morris were "termination offenses," and he said that Officer Morris was terminated based upon each individually sustained charge. In other words, he explained, "I terminated him on the personal conduct, and I terminated him on the truthfulness." Chief Godwin said that the basis of the Truthfulness charge was that Officer Morris had denied making contact with Ms. Morgan after the incident when he had in fact sent her text messages. Upon further questioning with a verbatim transcript of Officer Morris's statement to the investigators, Chief Godwin conceded that Officer Morris was asked: "Did you call Ms. Morgan after this disturbance that occurred on the 24th and leave messages on her answering machine that you had ruined your life and ruined him (sic)?" Officer Morris simply answered, "No, I did not."

Chief Godwin said he had no evidence to prove that Officer Morris did in fact leave a message on an answering machine.

Before the Commission, counsel for the City moved to introduce into evidence the investigative file prepared by the Internal Affairs Bureau and relied upon by Chief Godwin during the previous administrative hearing. The investigative file contained, among other things, the statement of charges, internal memoranda regarding the investigation, documents relating to the 1999 incident, and the statement taken from Ms. Morgan. Counsel for Officer Morris initially objected on the basis of hearsay but stated:

> I would object to it being offered for the truth of the matters contained therein. It contains multiple levels of hearsay. It is -- if it is only being offered for proof of the fact that those are, in fact, the documents that Director Godwin reviewed and based his decision on, then for that sole purpose, I think they can come in for that purpose.

Counsel for the City agreed that the "sole purpose" of introducing the investigative file was the latter reason stated by counsel for Officer Morris, and the Commission entered the investigative file in evidence for that limited purpose.

Officer Morris testified as well. He explained the circumstances surrounding the physical altercation as follows:

> A.    We had an incident on February 24th of 2003 where she got irate because I was going to break up with her for good. She started throwing things, and I was trying to leave and she grabbed a hold of me, and I was trying to get her off of me.
> Q.    Okay. And what happened after that?
> A.    Well, the incident – when I tried to leave, I reached down to get my bag, and she grabbed a hold of me and went behind me and got a hold of my waist. And I was trying to get her off of me. I swung like that (indicating), and next thing I knew, she was running to her room –
> Q.    Okay.
> A.    – wanting me to leave.

Officer Morris then reenacted the altercation for the Commission, using a third person who was present in the courtroom as a stand-in for Ms. Morgan. He explained:

> A.    And she kept grabbing a hold of me, trying to see what was in the bag. Finally, I was, like, just – just get off me, like that (indicating).

Q. Okay.

A. And the next thing I knew, my elbow made contact with some part of her body. I do not know where.

Q. So your elbow made contact with some part of her body?

A. Yes.

Q. Did you later on find out what part of the body it made contact with?

A. I did later on that day.

Q. What part of the body made contact with it?

A. My elbow made – supposedly made contact with her eye, her left eye, I believe.

Officer Morris said that he did not see Ms. Morgan's face after his elbow struck her because he left to go to work and she went to her bedroom. He said the next time he saw Ms. Morgan was seven to ten days after the incident, and at that time, he noticed "a little bit" of bruising on her face.

Following the hearing, in November 2006, the Commission issued a written decision sustaining both charges against Officer Morris and upholding his termination. However, its written findings were basically limited to a statement that "the disciplinary action taken by the City in terminating Mr. Morris' employment was reasonable under the circumstances" and that the Commission "cannot second guess Director Godwin's conclusion that the personal conduct of Mr. Morris, under all the circumstances, justified the disciplinary action taken."

In January 2007, Officer Morris filed a petition for review in chancery court. In February 2009, the chancery court entered an order upholding the decision to terminate Officer Morris. The court first concluded that the Truthfulness charge should have been dismissed because there was no evidentiary basis for sustaining it. Nevertheless, the court found substantial and material evidence to uphold termination for the Personal Conduct charge, considering Chief Godwin's testimony that he would have terminated Officer Morris on that charge alone.

On appeal to this Court, we concluded that it was impossible to review the Commission's decision due to its lack of findings of fact, as we could not discern whether the Commission applied the proper legal principles. As a result, in December 2009, we vacated the decision of the chancery court and remanded for entry of an order remanding to the Commission, with instructions to issue a decision containing findings of fact and conclusions of law.

In January 2011, the Commission issued an "Amended and Restated Decision" that included factual findings. The Commission found that Officer Morris and Ms. Morgan were

involved in a physical altercation, and that Officer Morris claimed that he had accidentally elbowed her in the left eye. It found that Ms. Morgan was observed by a co-worker later that morning with physical injuries indicative of domestic violence, and that the co-worker either called or convinced Ms. Morgan to call the Internal Affairs Bureau. The Commission noted that Lt. Jenkins went to Ms. Morgan's apartment to investigate, and she observed her injuries and took her statement. The Commission found that Lt. Jenkins observed injuries to Ms. Morgan's left eye, her face, chin and neck, and that the injuries worsened during their meeting. The Commission then concluded that "Ms. Morgan's physical injuries were consistent with her description of Mr. Morris' attack on her and were not consistent with his allegation of an 'accidental elbow.'" It further found that "[t]he City established by a preponderance of the evidence that Mr. Morris' conduct on February 23, 2003 constituted acts of domestic violence, constituted violations of DR-104 – Personal Conduct, and brought discredit on MPD." Regarding the Truthfulness charge, the Commission concluded that Officer Morris gave "unclear or deceptive" answers during the investigation and was "inconsistent, and untruthful in his statements[.]" Ultimately, the Commission found that the City had established by a preponderance of the evidence that termination was reasonable and justified under all the circumstances.

Officer Morris then filed another petition for review in chancery court. Upon reviewing the record and the Amended and Restated Decision of the Commission, the chancery court found that "there was not substantial or material evidence to support the Commission's findings that the Petitioner was guilty of either acts of domestic violence in violation of DR-104 or that he was untruthful in violation of DR-108." The court noted that Officer Morris had denied assaulting Ms. Morgan and claimed that he accidentally elbowed her while attempting to extricate himself from her hold. The court also noted that the investigative file containing Ms. Morgan's statement "was entered into evidence solely for the limited purpose that it was relied upon by Deputy Chief Godwin, but was not entered for the truth of the matters asserted therein." The court concluded that Ms. Morgan's statement "was not part of the record that could be considered by the Civil Service Commission." As a result, it concluded, "The only evidence in the record therefore was the testimony of Jason Morris who denied striking Ms. Morgan and photos which did not establish that Officer Morris intentionally struck Ms. Morgan or that he was guilty of domestic violence." The court further found that Officer Morris "did not have the opportunity to confront and cross examine his accuser [Ms.] Morgan." In conclusion, the chancery court found that there was not substantial and material evidence to support termination, and it reversed the decision of the Commission and ordered that Officer Morris be reinstated. The City timely filed a notice of appeal to this Court.

## II.  ISSUES PRESENTED

On appeal, the City of Memphis contends that the chancery court erred in concluding that the Commission's decision was unsupported by substantial and material evidence, arbitrary, and capricious.  We note, however, that the City limits its argument on appeal to the sufficiency of the evidence to support the Personal Conduct charge, and it does not present any argument to suggest that the trial court erred in concluding that there was insufficient evidence to sustain the Truthfulness charge.  As a result, we will not review the trial court's decision in that regard, and it is hereby affirmed.  We will limit our review to the issues surrounding the Personal Conduct charge and the ultimate decision to terminate Officer Morris.

The appellee, Officer Morris, also raises several issues on appeal.  He argues that reversal of the Commission's decision was proper because it was unsupported by substantial and material evidence, arbitrary, and capricious.  In addition, he claims that reversal was proper because he was denied due process when "he was not provided the opportunity to confront his accuser."  Finally, Officer Morris argues that the record of an expunged criminal matter was improperly considered by Chief Godwin and by the Commission.

For the following reasons, we vacate the reinstatement of Officer Morris and reinstate the Commission's decision to uphold termination.

## III.  STANDARD OF REVIEW

On appeal, we review the Commission's decision using the same standard of review used by the chancery court.  ***Davis v. Shelby County Sheriff's Dep't***,  278 S.W.3d 256, 264 (Tenn. 2009).  Judicial review is governed by the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322.  ***See* Tenn. Code Ann. § 27-9-114(b)(1).**

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A) Unsupported by evidence that is both substantial and material in the

-8-

light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

**Tenn. Code Ann. § 4-5-322.** "'Substantial evidence is not limited to direct evidence but may also include circumstantial evidence or inferences reasonably drawn from direct evidence.'" *Crawford v. Dep't of Finance & Admin.*, No. M2011-01467-COA-R3-CV, 2012 WL 219327, at *5 (Tenn. Ct. App. W.S. Jan. 24, 2012) (quoting *Wayne Co. v. Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). "Substantial and material evidence" has been defined as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Macon v. Shelby County Gov't Civil Serv. Merit Bd.*, 309 S.W.3d 504, 509 (Tenn. Ct. App. 2009). It requires "'something less than a preponderance of the evidence, but more than a scintilla or glimmer.'" *Id.* (quoting *Wayne County*, 756 S.W.2d at 280). We may reject the Commission's factual findings "only if a reasonable person would necessarily reach a different conclusion based on the evidence." *Davis*, 278 S.W.3d at 265 (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001)). However, the "substantial and material evidence" standard still requires a "searching and careful inquiry" that subjects the Commission's decision to close scrutiny. *Freedom Broadcasting of TN, Inc. v. Tenn. Dep't of Revenue*, 83 S.W.3d 776, 781 (Tenn. Ct. App. 2002). A court's deference to an agency or commission's expertise is "'no excuse for judicial inertia.'" *Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 147 (Tenn. Ct. App. 1999) (quoting *Wayne County*, 756 S.W.2d at 279). A decision that is not supported by substantial and material evidence is, by definition, arbitrary and capricious. *Outdoor Resorts at Gatlinburg, Inc. v. Utility Mgmt. Review Bd.*, No. E2011-01449-COA-R3-CV, 2012 WL 1267858, at *5 (Tenn. Ct. App. Apr. 13, 2012) (citing *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993)).

## IV. DISCUSSION

### A. Substantial and Material Evidence

First, we will consider the City's assertion that the chancery court erred in concluding that the Commission's decision was not supported by substantial and material evidence. The City argues that the record contained substantial and material evidence to support the Commission's finding that Ms. Morgan's multiple injuries "were consistent with her description of Mr. Morris' attack on her and were not consistent with his allegation of an

'accidental elbow.'" Pointing to the testimony of Lt. Jenkins and the photographs of Ms. Morgan's injuries, the City claims that there is adequate evidentiary support for the Commission's conclusion that Officer Morris's conduct "constituted acts of domestic violence" and violated DR-104 – Personal Conduct. Officer Morris, of course, argues that the Commission's decision is unsupported by substantial and material evidence. He claims that because the investigative file containing Ms. Morgan's statement was entered into evidence only to show the documents that were relied upon by Chief Godwin, and not for the truth of the matters asserted, then, according to Officer Morris, his testimony that he did not intentionally strike Ms. Morgan was "unrefuted." Officer Morris argues that the Commission effectively adopted Chief Godwin's reliance upon Ms. Morgan's statement in the investigative file even though it was not admitted for the truth of the matters asserted.

As previously noted, counsel for Officer Morris raised a hearsay objection when counsel for the City moved to introduce the investigative file prepared by the Internal Affairs Bureau, but she stated, "if it is only being offered for proof of the fact that those are, in fact, the documents that Director Godwin reviewed and based his decision on, then for that sole purpose, I think they can come in for that purpose." The investigative file was entered into evidence for this limited purpose. The statement given by Ms. Morgan was contained within the investigative file, but it was never admitted into evidence for the truth of the matters asserted therein. Therefore, if the only evidence before the Commission of Ms. Morgan's description of the incident came from the statement in the investigative file, we would likely conclude that the Commission erred in finding that Ms. Morgan's injuries were "consistent with her description of Mr. Morris' attack on her." However, that is not the situation we have before us. During the hearing before the Commission, counsel for Officer Morris questioned Chief Godwin regarding the content of Ms. Morgan's statement and elicited testimony from him regarding Ms. Morgan's version of the incident. The following exchange took place between counsel for Officer Morris and Chief Godwin:

Q.    Wouldn't you say that if Officer Morris struck Ms. Morgan with his fists on — or twice – I believe she gave some indication that he struck her twice in the eye with his fist – that she would have had a little m ore of a black eye than what's shown there?

[Counsel for the City]:    Objection. Objection. Mr. Chairman, she's asking him to speculate . . . .

Mr. Chairman:    Restate the question.

[Counsel for Officer Morris]:    I can lay a little more of the foundation. But the question was –

-10-

Mr. Chairman:     Okay. Well, let's start – let's do that.

Q.    Well, over the years of your being a police officer, have you observed numerous individuals who've been hit in the eye with a fist?

A.    I've seen individuals that have been beaten or struck, yes.

. . .

Q.    And the question was: Given Officer Morris' size and Ms. Morgan's size, if he had struck her with his fist in her eye, she would have had a much bigger bruise than what she had?

[Counsel for the City]:    Objection. Once again, Mr. Chairman, he's – she's asking him to speculate . . . .

Mr. Chairman:     I'm concerned a little bit right now because we have not examined the statement of Ms. Morgan –

[Counsel for the City]:    Right.

Mr. Chairman:     – and so, all we know is that there was a flying elbow. So I guess, are we going – now supposed to consider the statement of Ms. Morgan?

[Counsel for Officer Morris]:    The investigative file, which is in evidence – I realize you haven't had a chance to look at it – but indicates that Ms. Morgan stated that he hit her in the face with his fist.

MR. CHAIRMAN:    Okay.

Q.    Is that – is that fair to say?
A.    Yeah. I – again, I haven't read it in a while, but that's – I can —
Q.    Is that what you recall, that she indicated –
A.    Yeah –
Q.    – that he hit –
A.    – but I can't remember –
Q.    – her in the face –
A.    – everything she said. Yeah.
Q.    Okay. Thank you.
A.    I can't remember her statement.
Q.    Would you agree with me that she indicated that he hit her in the face with his fist?

A.     (Nods head affirmatively.)

Q.     Would you like to look at the summary, because it's in here?

A.     Yeah. I – well, I mean, it's just been so long.

Q.     Look at the summary. Third paragraph.

A.     Okay.

(WHEREUPON, THE ABOVE-MENTIONED DOCUMENT WAS PASSED TO THE WITNESS. )

Q.     "Ms. Morgan stated Officer Morris had hold of her hair and hit her in the face with his fist."

A.     That's – yes, ma'am.

Q.     Is that what it says?

A.     Yes, ma'am.

Clearly, counsel for Officer Morris elicited testimony from Chief Godwin about the content of Ms. Morgan's statement in order to advance her theory that if Officer Morris had truly struck her with his fist, Ms. Morgan would have had a bigger bruise. During this exchange, counsel for Officer Morris brought to light the content of Ms. Morgan's statement, going so far as to quote a portion of the statement during her questioning in order to have Chief Godwin confirm that Ms. Morgan had in fact said that Officer Morris hit her in the face with his fist. Because counsel for Officer Morris elicited this testimony, we cannot say that the Commission erred in considering it, and ultimately rejecting the premise of counsel's "bigger bruise" argument. Instead, the Commission concluded that "Ms. Morgan's physical injuries were consistent with her description of Mr. Morris' attack on her and were not consistent with his allegation of an 'accidental elbow.'"

In addition to the evidence of Ms. Morgan's "description" of the incident, the Commission also noted the fact that Ms. Morgan had injuries to not only her left eye but also her face, chin and neck. These multiple injuries were documented in photographs and described and diagramed by Lt. Jenkins. Furthermore, the Commission was able to assess Officer Morris's credibility during his testimony about the incident, and it had the unique opportunity to observe Officer Morris's reenactment of the incident using a "stand-in" for Ms. Morgan. Obviously, the Commission did not believe Officer Morris's story about an "accidental elbow." "When [an] agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight." *City of Memphis v. Civil Serv. Comm'n of City of Memphis*, 238 S.W.3d 238, 243 (Tenn. Ct. App. 2007) (citing *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)).

Considering all of the evidence before the Commission, we find substantial and material evidence to support its findings that Ms. Morgan's injuries were consistent with her

description of Mr. Morris' attack on her and were not consistent with his allegation of an "accidental elbow," and therefore Officer Morris's actions "constituted acts of domestic violence" and violated DR-104 – Personal Conduct. A reasonable person could certainly conclude that Officer Morris's conduct reflected adversely on the Memphis Police Department and the law enforcement profession. Chief Godwin testified that this incident did in fact cast a negative image on the Police Department, and he explained that domestic violence is not tolerated by the Department because it is inconsistent with being a police officer, who is supposed to enforce laws and assist victims.

Having found substantial and material evidence to support the Commission's finding that Officer Morris violated DR-104, we now consider whether this violation, in addition to the surrounding circumstances, furnished a reasonable basis for his termination. *City of Memphis v. Cattron*, No. W2010-01659-COA-R3-CV, 2011 WL 1902167, at *5 (Tenn. Ct. App. May 13, 2011). Section 246 of the Memphis City Charter provides that "[t]he City may terminate, suspend, or demote an employee for just cause. . . . Just cause shall exist when the employer had a reasonable basis for the action taken." Section 248 of the Charter states that on appeal to the Civil Service Commission, "[t]he burden of proof required to sustain the action of the City shall be by a preponderance of the evidence. If, after a presentation of the proof, the commission finds that there exists a reasonable basis for the disciplinary action taken, the action of the City shall be sustained." Therefore, the Commission was required to affirm the City's decision to terminate Officer Morris if the City had proven, by a preponderance of the evidence, that it had a reasonable basis for terminating Officer Morris. The Commission found, in its Amended and Restated Decision, that the City had established by a preponderance of the evidence that the discipline of termination was reasonable and justified under all the circumstances. On appeal, Officer Morris argues that this finding was arbitrary and capricious and characterized by an abuse of discretion.

He first argues that the "Hearing Summary" prepared by Chief Godwin reflects that he was terminated "for the combined alleged infractions of DR-104 and DR-108," and therefore, if he did not violate DR-108, "he should not have been discharged." We disagree with this characterization of the proceedings. Chief Godwin simply stated in the Hearing Summary that he was "sustaining the charge of D R - #104 - Personal Conduct and D.R. - #108 Truthfulness and the action ordered is termination." Chief Godwin testified during the hearing before the Commission that both of the charges against Officer Morris were "termination offenses" and that Officer Morris "was actually terminated on both charges individually." In other words, he explained, "I terminated him on the personal conduct, and I terminated him on the truthfulness." Chief Godwin also testified that he would have terminated Officer Morris for the Personal Conduct violation even if he had no prior disciplinary history. As such, we reject the assertion that Officer Morris was only terminated because Chief Godwin found "combined violations" of DR-104 and DR-108.

Next, Officer Morris challenges Chief Godwin's statement, in the Hearing Summary, that this incident reflected "a pattern of behavior that is inconsistent with traits required to be a police officer." Chief Godwin noted that Officer Morris's disciplinary record included "several sustained administrative charges including Personal Conduct, Neglect of Duty and violation of departmental Sick Abuse Policy." Officer Morris argues that the only "relevant" discipline in his record was the 1999 suspension for his violation of DR-104, and he claims that one previous relevant incident cannot constitute a "pattern" of conduct. Officer Morris also points out that the Commission found, in its Amended and Restated Decision, that he "had been charged four times with violations of DR 104 - Personal Conduct, three of which had been sustained, in addition to numerous other disciplinary infractions." He argues that there is no substantial and material evidence in the record to support this factual finding, as the only instances of discipline that were discussed at the Commission hearing were the 1999 suspension for violation of DR-104 and a neglect of duty charge, although his "Officer Performance Reports" also indicated past abuse of the sick leave policy. From our review of the record, it appears that the Commission likely made its factual finding based upon a "Statement of Charges" that listed Officer Morris's disciplinary history and was attached to a memorandum that was entered into evidence by counsel for Officer Morris. According to this document, the 2003 incident with Ms. Morgan led to Officer Morris's fourth charge for a violation of DR-104, and it was the third DR-104 charge to be sustained. It appears that Officer Morris had been disciplined in some form or another on twelve occasions. Thus, the Commission's factual finding regarding Officer Morris's disciplinary history was incorrect to the extent that it stated that he had been charged four times with violating DR-104 *prior to* this incident. However, it was not grossly inaccurate. In any event, the crux of Officer Morris's argument regarding his disciplinary history is that there is no substantial and material evidence to support a finding that termination, "rather than some lesser form of discipline, was reasonable under the circumstances." However, we are only charged with reviewing the Commission's finding that there was "a reasonable basis" for terminating Officer Morris, and we are limited by the narrow scope of review of Tennessee Code Annotated section 4-5-322. "If a government employer has a choice of sanctions available for the violation of an employment rule, it would only be a finding of arbitrariness that would allow a court to 'second guess' the administrative decision maker." *Lien v. Metropolitan Government of Nashville*, 117 S.W.3d 753, 761 (Tenn. Ct. App. 2003); *see also Nixon v. City of Murfreesboro*, No. M2009-01347-COA-R3-CV, 2010 WL 2730565, at *14 (Tenn. Ct. App. July 9, 2010) (explaining that under the UAPA, the court's task was to determine whether the decision to terminate the petitioner's employment was an abuse of discretion, not whether another result might have been proper). We are not inclined to simply substitute our judgment for that of the Commission on the choice of an appropriate sanction:

It is settled law that sanctions lawfully applied by an administrative agency are subject only to very limited judicial review. *Butz v. Glover*

*Livestock Comm'n Co.*, 411 U.S. 182, 185-86, 93 S.Ct. 1455, 1458 (1973); *Woodard v. United States*, 725 F.2d 1072, 1077 (6th Cir. 1984); *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 693 (Tenn. 1996). Because "the relation of remedy to policy is peculiarly a matter of administrative competence," *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194, 61 S.Ct. 845, 852 (1941), the courts should not second-guess the severity of sanctions imposed by an administrative agency when, after review, it is apparent that those sanctions were lawfully applied in circumstances of sufficiently satisfactory evidence. *Robertson v. Tenn. Bd. of Social Worker Certification & Licensure*, No. M2004-00647-COA-R3-CV, 2005 WL 3071571, at \*7 (Tenn. Ct. App. Nov. 15, 2005) perm. app. granted (Tenn. May 30, 2006); *Wright v. Tenn. Bd. of Exam'rs in Psychology*, No. M2003-01654-COA-R3-CV, 2004 WL 3008881, at \*6 (Tenn. Ct. App. Dec. 28, 2004), perm. app. denied (Tenn. June 27, 2005); *Mosley v. Tenn. Dep't. of Commerce & Ins.*, 167 S.W.3d at 318-322.

***Armstrong v. Metro. Nashville Hospital Authority***, No. M2004-01361-COA-R3-CV, 2006 WL 1547863, at \*3 (Tenn. Ct. App. June 6, 2006);[1] *see also **Gross v. Gilless***, 26 S.W.3d 488, 495 (Tenn. Ct. App. 1999) (acknowledging that the Shelby County Civil Service Merit Board's decision to terminate a sheriff's department employee rather than to impose a lesser degree of discipline appeared harsh, but stating that the Court was "not in a position to second-guess the disciplinary action chosen"). Here, we find that the sanction imposed was warranted in law and justified in fact. Finding a reasonably sound factual basis for the disciplinary action taken, we cannot say that the Commission erred in upholding the decision to terminate Officer Morris.

Finally, Officer Morris argues that "[a]n employee cannot be disciplined a second time for the same offense." This argument is apparently due to Chief Godwin's testimony that he considers an officer's "disciplinary resume" when considering the appropriate punishment for a violation because "[i]t's part of progressive discipline." We find no impropriety in the consideration of Officer Morris's disciplinary resume when determining the appropriate punishment. "While prior disciplinary actions have no bearing on whether an employee has engaged in work-related conduct that warrants discipline, an employee's prior conduct, both

---

[1] ***Armstrong*** involved an employee of the Metropolitan Nashville General Hospital whose termination was upheld by the Metropolitan Nashville Hospital Authority. The Metropolitan Nashville Hospital Authority "serves as the functional equivalent of the Civil Service Commission with regard to employees of the Metropolitan Nashville General Hospital." 2006 WL 1547863, at \*2. Therefore, the Uniform Administrative Procedures Act governed both the administrative and judicial proceedings in ***Armstrong***. The employee filed a petition for judicial review in chancery court, and on appeal to this Court, she argued that she should have been suspended or demoted rather than discharged. We declined to second-guess the decision to terminate. ***Id.*** at \*4.

good and bad, can be considered when determining what the appropriate disciplinary action should be." ***Kelly v. Tenn. Civil Serv. Comm'n***, No. M1999-00168-COA-R3-CV, 1999 WL 1072566, at *4 (Tenn. Ct. App. Nov. 30, 1999) (citing *Tenn. Dep't of Human Servs. v. Mahon*, No. 01A01-9504-CH-00143, 1995 WL 581086, at *4 (Tenn. Ct. App. Oct. 5, 1995)); *see also* ***Maasikas v. Metro. Gov't of Nashville & Davidson County***, No. M2002-02652-COA-R3-CV, 2003 WL 22994296, at *7 (Tenn. Ct. App. Dec. 22, 2003) (finding that an employee's past disciplinary record was properly used to enhance the penalty for his conduct). This issue is without merit.

### B. *Right to Confront the Accuser*

Next, we will consider Officer Morris's assertion that the Commission's decision "violated [his] right to confront his accuser." Officer Morris argues that because the City failed to "present" his accuser, Ms. Morgan, he did not have the opportunity to confront her or cross-examine her. In response, the City argues that Officer Morris was not denied the right to confront his accuser, as Officer Morris had the opportunity to subpoena Ms. Morgan and made no attempt to do so. The City claims that it was not its burden to "present" Ms. Morgan for Officer Morris to confront or cross-examine. The City further argues that Officer Morris had an opportunity to cross-examine Ms. Morgan during his previous criminal trial, and it claims that he could have introduced Ms. Morgan's criminal trial testimony if he desired to do so.

Both parties cite ***Kirkwood v. Shelby County Gov't***, No. W2005-00769-COA-R9-CV, 2006 WL 889184 (Tenn. Ct. App. Apr. 6, 2006) in support of their arguments. That case involved an employee of the Shelby County Sheriff's Department, Mr. Kirkwood, who appealed his termination to the Civil Service Board. *Id.* at *1. Mr. Kirkwood's co-workers who made accusations against him gave statements during an internal investigation by the Sheriff's Department, and by stipulation, their transcribed statements were entered into evidence. None of those accusers appeared in person at the hearing. *Id.* at *2. The Board upheld Mr. Kirkwood's termination, and he sought review in chancery court, arguing that his employer had "relied solely on the work product of an internal affairs investigation . . . over Petitioner's objection as to the hearsay nature of the evidence."[2] *Id.* at *3. The chancery court held that "the Board's failure to require any live testimony of Shelby County employees who made accusations against the former employee was a violation of [the] employee's due process rights to cross-examine his accusers, and that the obligation to call the accusers is

---

[2] Apparently, the employee's attorney objected at some point to the hearsay nature of the statements obtained during the investigation, but later stipulated to the admission into evidence of those same statements. On appeal, we noted that the attorney's actions "waived any hearsay objection." ***Kirkwood***, 2006 WL 889184, at *9.

that of the employer and not that of the employee." *Id.* at *1. On appeal, we vacated the chancery court's decision. Regarding the obligation to call witnesses, we explained:

> Shelby County has no obligation to call accusers of an employee at a Review Board hearing. Rather, Shelby County has only the obligation of meeting its burden of proof. Accordingly, we find that there exists no obligation on the part of Shelby County to call Mr. Kirkwood's Accusers. There only exist[s] the burden of going forward and establishing a prima facie case against the employee, which Shelby County successfully met in the present case.

*Id.* at *6. Next, we considered whether the Board's failure to require any live testimony of those who made accusations against Mr. Kirkwood resulted in the denial of his "opportunity to confront and cross-examine the witnesses against him." *Id.* We acknowledged that in *Case v. Shelby County Civil Service Merit Bd.*, 98 S.W.3d 167, 174-75 (Tenn. Ct. App. 2002), this Court held that "due process mandates that a classified civil service employee whose employment may be terminated only for cause must be afforded the opportunity to confront and cross-examine the witnesses against him at the post-termination hearing where the facts giving rise to termination are in dispute or where the severity of the discipline is challenged." However, we said it is important to note that an employee must only be afforded "the opportunity" to confront and cross-examine the witnesses against him. *Kirkwood*, 2006 WL 889184, at *8. "[T]hat 'opportunity' is a right that may be lost or waived by the employee." *Id.* Examining the facts before us, we found that Mr. Kirkwood had the opportunity to cross-examine the witnesses who did testify. With regard to the co-workers who did not appear, we found that the employee waived his hearsay objection to their testimony by stipulating to its admission, and we noted that there was obviously no need for the County to present live testimony because of the stipulation to the entry of the transcribed statements. *Id.* at *9. We then noted that Mr. Kirkwood "chose not to issue subpoenas to have those witnesses present during the Review Board hearing in order to cross examine them on their transcribed statements." *Id.* In sum, we concluded:

> The record reveals, without question, that Mr. Kirkwood was provided an adequate opportunity to confront his Accusers. Mr. Kirkwood cross-examined Inspectors Cash and Peete. Mr. Kirkwood had the opportunity to examine Lt. Ducrest, but declined to do so. Mr. Kirkwood had the opportunity to subpoena . . . those who had given testimony against him. He did not. Mr. Kirkwood's failure to capitalize on his opportunity to examine those who made accusations against him was not the result of the County's conduct, but was instead the product of his own attorney's tactical decisions. Fundamental fairness required that Mr. Kirkwood be given fair opportunity to confront his Accusers and to test the strength of the evidence against him.

However, the decision to take advantage of the opportunity ultimately rested with Mr. Kirkwood, and he must bear the responsibility for waiving his opportunity to confront his accusers. Mr. Kirkwood was afforded the opportunity to examine his Accusers and was not denied his rights under Article I, § 8 of the Tennessee Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

*Id.*

As in ***Kirkwood***, we conclude, in the case at bar, that the City had no obligation to "present" the accuser at the hearing. Rather, the City only had the obligation of meeting its burden of proof; it had the burden of going forward to establish a prima facie case against the employee. It attempted to do so by presenting the testimony of Lt. Jenkins and Chief Godwin. As for Officer Morris's assertion that the City violated his due process right to confront his accuser, we find no merit in his argument. Counsel for Officer Morris cross-examined both Lt. Jenkins and Chief Godwin. The City did not rely upon the testimony of Ms. Morgan to establish its case. Ms. Morgan did not testify, and the City did not introduce her statement for the truth of the matter asserted. As previously discussed, it was counsel for Officer Morris who elicited testimony about Ms. Morgan's statement and effectively put Ms. Morgan's statement before the Commission for its consideration. In conclusion, we find that Officer Morris was "afforded the opportunity to confront and cross-examine the witnesses against him." He cross-examined the witnesses who testified at trial and was afforded the opportunity to test the strength of the evidence against him. Officer Morris cannot complain that he was unable to confront one of the "witnesses against him" when that person did not testify, her written statement was not introduced for the truth of the matter asserted, and it only came into consideration due to the tactical decision of his own attorney. There was no denial of due process in this case.

### C. Expungement

Finally, Officer Morris argues that expunged records were erroneously maintained in the investigative file considered by Chief Godwin, and he claims that these records influenced the disciplinary action taken against him. As we have noted, in 1999, Officer Morris was suspended for five days due to a violation of DR-104 Personal Conduct that arose out of another domestic violence incident. The investigative file relied upon by Chief Godwin contained several documents related to this incident such as internal memoranda and items regarding the disciplinary charge, but it also included several documents relating to Officer Morris's arrest based on the same incident. The record before us contains an "Affidavit of Complaint" for the criminal charge of "assault/domestic violence" along with an arrest ticket. At the hearing before the Commission, Chief Godwin acknowledged that the investigative file also contained an order of dismissal indicating that the criminal charges

were dismissed with prejudice after Officer Morris successfully completed a diversion program. He also recalled reviewing a document indicating that the criminal charges were expunged. Counsel for Officer Morris then asked Chief Godwin if he was familiar with a Tennessee statute that, according to counsel, indicates that expunged charges cannot be used for any purpose, to which Chief Godwin responded, "I didn't use them. I didn't use the charges – his charge to terminate him." Chief Godwin said that he did see the document regarding the expunged charges and that he could not "erase it from [his] memory" simply because it was expunged, but, he added, "what I am saying is it was not the purpose of termination." Chief Godwin explained that what he took into consideration was the fact that Officer Morris had a previous violation of DR-104, and he said that he did not consider the criminal act.

From our review of the record, we conclude that the decision to terminate Officer Morris was not made because of the fact that he was arrested in 1999, participated in a diversion program, and obtained dismissal of the charges. Chief Godwin testified that he did not consider the criminal act, but the fact that Officer Morris had a previous violation of DR-104. He further testified that he would have terminated Officer based solely on the 2003 incident with Ms. Morgan, even if Officer Morris had no disciplinary history. Moreover, when Officer Morris argued before the Commission that the expunged records should not be considered, the Commission agreed. Its written decision states that "[t]he Commission agreed with the arguments of Mr. Morris' counsel that it could not consider the matters involved in the diversion and expungement of the 1998 alleged occurrence." Upon considering the other evidence presented, the Commission upheld termination. Considering the entire record, we find that Chief Godwin's knowledge of the expunged records from 1999 was harmless and did not influence his decision. *See* Tenn. Code Ann. § 4-5-322(i) ("No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.").

## V. CONCLUSION

For the aforementioned reasons, we affirm the chancery court's finding that there was insufficient evidence to sustain the Truthfulness charge, but we vacate the reinstatement of Officer Morris and reinstate the Commission's decision to uphold termination due to the Personal Conduct violation. Costs of this appeal are taxed to the appellee, Jason Morris, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.